FILED
SUPERIOR COURT
OF GUAM

2020 MAR 10 PM 1:23

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0742-18-01 |
|---|---|
| vs. | **DECISION AND ORDER** |
| STEVEN JAMES SABLAN LEON GUERRERO, | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on December 13, 2019, for hearing on Defendant Steven James Sablan Leon Guerrero's ("Defendant") Motion to Suppress. Defendant was present with counsel, Attorney William B. Brennan, and Assistant Attorney General Woodrow D. Pengelly was present on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order DENYING Defendant's Motion to Suppress.

## BACKGROUND

On or about November 22, 2018, Dennis Dizon ("Dizon") was apprehended at a Guam Power Authority ("GPA") substation in Mongmong, Guam. *See* W. Brennan Decl., Ex. A (Sep. 27, 2019). Dizon allegedly told GPD Officer Cruz that he was at the substation waiting for his "chakmat," identified as Erica Taimanglo. *Id.* Dizon allegedly later told Officer Cruz that this statement was false and that he was there as the lookout for several male individuals who were

going to steal copper wire. *Id.* Dizon told Officer Cruz that he only knew the two males by their first names, Jason and Mel, described the two males and indicated where one of them lived. *Id.* About forty minutes later, at the Hagatna Precinct, Dizon told Officer Cruz that he was with three males when they entered the fenced compound of the GPA substation. *Id.* Dizon provided Officer Cruz with other information related to Jason and Mel, including their plans for the copper wire. *Id.* No further information was mentioned relative to the involvement of a third male individual. *Id.* Dizon also provided a written statement to Officer Cruz, which includes information relative to Jason's role. *See* W. Brennan Decl., Ex. B (Sep. 27, 2019).

Officer Paulino conducted a follow up investigation into separate burglaries and after receiving information regarding Dizon on December 4 and 7, 2018, made arrangements to re-interview Dizon on December 10, 2018. *See* W. Brennan Decl., Ex. D (Sep. 27, 2019). On this date, Dizon identified Steven Sablan Leon Guerrero, Melvin Sablan Leon Guerrero and Jason Ray Taisipic Taimanglo as his co-conspirators in the alleged GPA substation theft and other alleged burglaries. *See id.*

The following day, Officer Paulino applied for a warrant to search certain property for specific items relating to the alleged burglaries, including Defendant's alleged address and vehicle. *See* W. Brennan Decl., Ex. E (Sep. 27, 2019). The Application was brought before the Court as Ex Parte Judge and was granted. In his Affidavit's Statement of Probable Cause, Officer Paulino set forth that On November 22, 2018, "DIZON informed Hagatna Police Officers that the males who managed to flee from the Substation were namely Steven, Mel, and Jason; however, DIZON did not know their last names. . ." *See* W. Brennan Decl., Ex. E (Sep. 27, 2019). The warrant application included a schedule of items to be searched for, with some items also having a corresponding serial number. *Id.* The warrant was executed on December 12, 2018. *Id.* On December 20, 2018, Officer Paulino went before the Court to return the warrant and provided a list of items seized from Defendant's alleged residence, a white shipping container, pursuant to the warrant. *Id.*

Subsequently, on December 21, 2018, Defendant, Dennis Delosario Dizon, Melvin Sablan Leon Guerrero and Jason Taimanglo were each indicted with the following charges: (1) Burglary (As a Second Degree Felony) – 4 Counts; (2) Theft By Receiving (As a Second Degree Felony) – 4 Counts; (3) Theft (As a Second Degree Felony) – 4 Counts; (4) Attempted Theft (As a Second Degree Felony); and (5) Criminal Trespass (As a Misdemeanor). (Indictment, Dec. 21, 2018). All charges relating to Defendant were severed from the other defendants on July 31, 2019. *See* Order, Jul. 31, 2019.

On September 27, 2019, Defendant filed the instant Motion to Suppress. On November 4, 2019, the Government filed its Opposition, and on November 12, 2019, Defendant filed his Reply.

On December 13, 2019, the Court held a Motion Hearing to hear arguments on the threshold issue of whether Defendant made a substantial preliminary showing that a *Franks* evidentiary hearing is warranted pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). After hearing oral arguments from the parties, the Court placed the matter under advisement.

## DISCUSSION

Defendant moves the Court to suppress evidence seized pursuant to the December 11, 2018 warrant because such warrant is invalid under *Franks v. Delaware*.[1] *See generally*, Mot. Suppress at 1-7.

### I. Franks Hearing Standard

In *Franks*, the Supreme Court of the United States held that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false

---

[1] Defendant also moves the Court to suppress evidence seized pursuant to the warrant because officers executing the warrant went beyond the scope of the warrant. *See* Mot. Suppress at 7-9. This issue is not yet before the Court at this time.

*People v. Leon Guerrero*
Case No. CF0742-18-01
Decision and Order

material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. 154, 155–56 (1978). Thus, "[a] defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) (citations omitted). The Supreme Court expressly recognized in *Franks* that there is "a presumption of validity with respect to the affidavit supporting the search warrant," and that "if, when the material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." 483 U.S. at 171-72. A "totality of circumstances" test should be applied in determining whether the affidavit established probable cause. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). "[S]o long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236 (citation and quotation marks omitted). "In doubtful cases, preference should be given to the validity of the warrant." *United States v. Barnes*, 816 F.2d 1354, 1357 (9th Cir. 1987).

**II. Officer Paulino's Affidavit**

The first prong of *Franks* requires the Court to determine whether Defendant has made a substantial preliminary showing that Officer Paulino's Affidavit contains intentionally or recklessly false statements or misleading omissions. Here, Defendant alleges that Officer Paulino's Affidavit in support of the search warrant application contained intentional or reckless misrepresentations and omissions that were material to the Court's finding of probable cause. *Id.*

Defendant first sets forth that Officer Paulino's Affidavit avers that on November 22, 2018, Dizon told officers that Steven, Mel and Jason were his accomplices in the GPA

Substation Facility attempted copper wire theft, contrary to the GPD narrative report. *Id.* at 5. However, the Affidavit does not mention that Dizon told officers that he only allegedly knew Mel and Jason's first names and that he allegedly lied to police when he was first discovered, stating he was waiting for his "chakmat." *Id.*

The Government acknowledges that the "affidavit does erroneously mention that Defendant was named by Dizon on November 22, 2018 and does not mention the girlfriend story." (Opp'n at 2). The Government argues, however, that Officer Paulino's inaccurate claim "is at best merely a negligent oversight and in no way rises to the level of reckless disregard for the truth." *Id.* at 3.

The Court begins its evaluation noting that there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.*

In this case, there is no dispute that Office Paulino misrepresented in his affidavit that Dizon told officers that Defendant was identified as one of his accomplices on the night of November 22, 2018, and that Officer Paulino did not mention that Dizon allegedly lied to the police when he was first discovered that night, stating that he was waiting for his "chakmat." What is disputed, however, is whether such misrepresentation was *intentional or reckless and material to the Ex Parte Judge's finding of probable cause.* The Court does not find that Officer Paulino's claim that Dizon named Defendant in the November 22, 2018 interview to be an "intentional falsehood" or "reckless disregard for the truth." "[A]llegations of negligence or innocent mistake are insufficient" for a *Franks* hearing. *Franks*, 438 U.S. at 171. Although Defendant was not named by Dizon on November 22, 2018, he was named by Dizon later on December 20, 2018 during Officer Paulino's interview with Dizon. The Court finds that Officer

Paulino's statement about when Defendant was first named by Dizon was a negligent oversight, and not a reckless disregard for the truth.

The Court also does not find that Officer Paulino's omission of Dizon's initial story that he was waiting for his "chakmat" was intended to mislead the Ex Parte Judge. "Merely identifying factual omissions is insufficient. Rather, to obtain a *Franks* hearing, the defendant must show that the omissions were designed to mislead, or made in reckless disregard of whether they would mislead and that the omissions were material, meaning that their inclusion in the affidavit would defeat probable cause." *United States v. Clenney*, 631 F.3d 658, 664. The "worst course of action would be to pick apart warrant affidavits from the pristine perch of hindsight or to penalize officers for securing what the law requires." *Id.* at 655. Here, Defendant argues that Dizon's "credibility was part and parcel to the Magistrate's finding of probable cause because there was no other incriminating evidence of Steven's involvement in criminal conduct presented to the Magistrate." (Reply at 3). "If an informant's history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) (citing *United States v. Hall,* 113 F.3d 157, 159 (9th Cir.1997)). "If inclusion of the omitted facts would not have affected the probable cause determination, no *Franks* hearing is required. The determination of whether information provided by an informant establishes probable cause is based on the 'totality of the circumstances.'" *Id.* (internal citations omitted).

In this case, Dizon's initial story about why he was present at the scene of the first alleged offense was given to law enforcement officers responding to the scene and not under oath to a magistrate. Dizon did not have a criminal record for any crimes of dishonesty or making false statements under oath. *Cf United States v. Hall*, 113 F.3d 157 (9th Cir. 1997) (informant's credibility critical in reviewing magistrate's probable cause determination as the informant and state trooper omitted numerous crimes under oath before the magistrate, including omitting the informant's conviction for making a false report to law enforcement officers). Although Dizon initially gave a false reason for being at GPA on November 22, 2018, the Court does not find that the omission of such statement to be material or that it was intended

to mislead based on the crimes alleged. As the Government sets forth, the "affidavit clearly indicates Dizon was involved in a series of burglaries, so clearly Dizon [was] not being held out as a paragon of honesty." (Opp'n at 4). Further, "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search." *United States v. Harris,* 403 U.S. 573, 583 (1971). Dizon gave detailed first-hand information that incriminated him, identifying how the burglaries were committed and organized, and admitted to other burglaries in addition to the GPA burglary, which GPD was able to independently corroborate afterwards. Accordingly, the Court finds that Defendant has not made a substantial preliminary showing that Officer Paulino's affidavit contained intentionally or recklessly false statements or misleading omissions, and is therefore not entitled to a *Franks* evidentiary hearing on his allegations.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). A Motion Hearing is set for March 27, 2020 at 9:00 a.m./p.m. to consider the remaining arguments raised in Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 10th day of March, 2020.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:

AG: J.Arriola

Date: 3/10/20 Time: 1:25

Deputy Clerk, Superior Court of Guam

*People v. Leon Guerrero*
Case No. CF0742-18-01
Decision and Order